UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOHN GALLUPE, | ) |
| | ) |
|     *Plaintiff* | ) |
| | ) |
| v. | )   No. 1:12-cv-242-NT |
| | ) |
| CAROLYN W. COLVIN, | ) |
| *Acting Commissioner of Social Security,*[1] | ) |
| | ) |
|     *Defendant* | ) |

### *REPORT AND RECOMMENDED DECISION*[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge erred in failing to find that he had severe impairments of a cognitive disorder and a personality disorder and required a sit-stand option, and that these omissions undermined the conclusion that his restrictions did not significantly erode the base of unskilled and semiskilled light and sedentary work available to him. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 8) at 4-13. I find no error and, accordingly, recommend that the court affirm the decision.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 12, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

This case returns to this court following a December 14, 2010, reversal and remand of a July 29, 2009, adverse decision on the plaintiff's March 31, 2006, applications for SSD and SSI benefits. *See* Record at 15-24, 663. The court ordered that, on remand, the administrative law judge be directed to update the plaintiff's medical records and reassess his residual functional capacity ("RFC"), expressly stating the frequency of any need to alternate sitting and standing and the length of time needed to stand. *See id*. at 664. The court further ordered that a new administrative hearing be held with vocational expert testimony as needed to clarify the impact of a revised RFC on the plaintiff's ability to perform work at the relevant exertional level. *See id*. Finally, the court directed that the administrative law judge issue a new decision based on the total record. *See id*.

In its own remand order dated April 29, 2011, the Appeals Council incorporated these directives and ordered that the administrative law judge consider not only the 2006 applications but also a new round of applications for SSI and SSD benefits that the plaintiff had filed on September 25, 2009. *See id*. at 668-69. The case was assigned to a new administrative law judge, who convened a hearing on October 17, 2011, during which he admitted additional medical records into evidence and heard the testimony of the plaintiff, mental health expert Charles O. Tingley, Jr., Ph.D., and vocational expert Jane A. Gerrish. *See id*. at 576; *see also id*. at 602-05.

The administrative law judge then issued the decision at issue, dated November 14, 2011, finding, in relevant part, pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2009, Finding 1, Record at 578; that he had severe impairments of acute

sigmoid diverticulitis with abscess and small bowel obstruction, status-post an exploratory laparotomy with small bowel resection, ileostomy, and colostomy and subsequent reversal and colorectal anastamosis, status-post surgery to correct post-surgical incisional hernia, and an affective disorder, an anxiety disorder, and a substance addiction disorder, Finding 3, *id*. at 579; that he retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds, was capable of understanding, remembering, and carrying out semi-complex tasks, was capable of exercising appropriate judgment involving semi-complex tasks, could tolerate supervision and interacting with up to six co-workers but needed to avoid public interaction, and could adapt to changes in the work setting, Finding 5, *id*. at 582; that, considering his age (39 years old, defined as a younger individual, on his alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 590; and that he, therefore, was not disabled from March 1, 2006, his alleged disability onset date, through November 14, 2011, the date of the decision, Finding 11, *id*. at 591.[3] The Appeals Council declined the plaintiff's request

---

[3] Although, for purposes of the plaintiff's application for SSD benefits, he was required to demonstrate that he was disabled on or before his date last insured, June 30, 2009, his condition through the date of the decision was relevant for purposes of SSI benefits, which are not tied to a claimant's date last insured. *See Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999) ("In 1972, Congress added a new social security program to provide 'supplemental security income' (called 'SSI') for 'aged, blind and disabled' persons of limited means regardless of their insured status. This is a social welfare program funded out of general taxpayer revenues. SSI is available even to those who qualify for SSD, but SSD income is considered in determining whether a disabled person qualifies for SSI under the latter's means test.") (citations omitted); *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured (March 31, 1995); however, eligibility for SSI benefits is not dependent on insured status.").

for a 30-day extension of time to appeal the decision, *id*. at 562-64, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.984, 416.1484; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work

even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Failure To Find Personality Disorder, Cognitive Disorder

The plaintiff first faults the administrative law judge for failing to find that he suffered from severe medically determinable personality and cognitive disorders. *See* Statement of Errors at 4-10. He relies on the diagnosis of these impairments by a Disability Determination Services ("DDS") examining consultant, Adrienne J. Butler, Ed.D., and a DDS nonexamining consultant, Robert Maierhofer, Ph.D., whose diagnoses he contends the administrative law judge wrongly rejected. *See id*. I am unpersuaded.

On October 28, 2010, based on review of a single record (the report of DDS examining consultant Dwayne A. Hogan, LCSW, LADC), a clinical interview, and a mental status examination, Dr. Butler diagnosed the plaintiff with cognitive disorder NOS [not otherwise specified], bipolar disorder NOS, panic disorder without agoraphobia, a history of alcohol dependence, and personality disorder NOS (mixed multiple features). *See* Record at 1149-54; *see also id*. at 1007-09. She noted, on mental status examination, that he "did have observable attention and concentration difficulties and memory retrieval problems" and that "[h]is short-term verbal memory functioning is estimated as being within the Extremely Low range[,]" "[h]is intellectual ability is estimated as being within the Low Average to Average range[,]" and his "long-term memory and general fund of information is estimated as being within the Borderline range; however, he needs wait time to process and retrieve information and there also are gaps in his recall of general information." *Id.* at 1153. She concluded:

> In regard to work-related activities, [the plaintiff] would be able to understand tasks consistent with Low Average to Average ability. He is apt to have difficulty

> with tasks requiring abstract reasoning and need further verbal mediation. He does have observable intermittent attention and concentration difficulties and would likely have difficulty sustaining prolonged task focus. [The plaintiff] is apt to be able to interact socially adequately in a small familiar setting, but likely to experience heightened anxiety and anxiety/panic attacks in large group or public setting. He is apt to have difficulty with adaptation given his low frustration tolerance and anger management problems.

*Id.*

Dr. Maierhofer completed a Psychiatric Review Technique Form ("PRTF") dated November 16, 2010, in which he indicated that the plaintiff had cognitive disorder NOS, depressive disorder NOS, anxiety disorder NOS, personality disorders (mixed), and alcohol abuse, which he found caused mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. *See id.* at 1161-73. In a mental RFC form of the same date, Dr. Maierhofer stated that the plaintiff could recall and understand simple tasks and procedures, focus and concentrate on simple work, do well in jobs that restricted his exposure to the general public in preference to working in a small group, and adapt to routine changes. *See id.* at 1177. With respect to the plaintiff's ability to focus and concentrate on simple work, he explained:

> [The plaintiff's] IQ is estimated in the low average range and he is able to focus and concentrate on simple work. He noted that he was able to follow written and oral instructions without difficulty and he completed self-care tasks without reminders. He can use the computer and he drives.

*Id.*

The administrative law judge gave little weight to the Butler opinion "as she relies on the [plaintiff's] self-reporting of symptoms in the context of a lack of treatment and compliance." *Id.* at 588 (citation omitted). He added that the diagnosis of a cognitive disorder NOS was not supported by the evidence of record, which contained "no objective testing of the [plaintiff's]

6

cognitive functioning" and reflected that he was able to obtain an Associate of Science degree, an achievement inconsistent with limitations associated with a disabling cognitive disorder. *See id*. He likewise accorded little weight to Dr. Maierhofer's diagnosis of a cognitive disorder, reasoning that Dr. Maierhofer had relied on the diagnosis by Dr. Butler, which was "based primarily on the [plaintiff's] self-report, and not on an objective assessment, such as IQ testing." *Id*. He added, "Moreover, Dr. Maierhofer estimated the [plaintiff's] IQ to be in the low-average range of intellectual functioning, which is inconsistent with a diagnosis of borderline intellectual functioning." *Id*. (citation omitted).

By contrast, the administrative law judge gave great weight to Dr. Tingley's testimony, which he reasoned was based on a complete review of, and consistent with, the evidence. *See id*. at 585-86. During the plaintiff's October 17, 2011, hearing, the administrative law judge asked Dr. Tingley whether he had an opportunity to form an opinion as to whether there were any appropriately diagnosed mental impairments of record. *See id*. at 631. Dr. Tingley said that he had. *See id*. He identified those impairments as "intermittent anxiety and depression that's noted by various providers and reported by the [plaintiff]" as well as "a substance disorder that's also waxed and waned over the years with alcohol being the primary substance of choice." *Id*.

Dr. Tingley testified that these impairments caused mild restriction of the plaintiff's activities of daily living, mild restriction in his social functioning, rising to moderate in certain situations if there were a large number of people around, and moderate restriction in concentration, persistence, and pace as of the prior couple of years, when the severity of his impairments had intensified. *See id*. at 631-32. He further testified that the plaintiff retained the capacity to understand, remember, and carry out simple or semi-complex instructions, use judgment in making semi-simple or semi-complex decisions, respond appropriately to

supervisors and to up to six co-workers in usual work situations, and adapt to changes in the ordinary work setting "with sufficient supervision and guidance[,]" which he explained meant that if the plaintiff were "directed to make changes, that he have careful instruction" and "there may be an opportunity to repeat it or to have him implement the changes, but under some guidance so that it's more clear that he's understood and carr[ied] them out properly." *Id*. at 632-33.

On cross-examination regarding the plaintiff's ability to carry out semi-complex tasks, Dr. Tingley testified, "I think he has evidence throughout his life of cognitive level that would be sufficient to handle semi-complex work but I think in a certain setting, not where he's overly stressed by the public or in a production thing with conflict with many coworkers. And if he has a facilitative supervisor, he should be able to handle simple and semi-complex skills." *Id*. at 636.

The plaintiff argues that:

1. The administrative law judge erroneously relied on the Tingley testimony to discount the diagnoses of personality disorder and cognitive disorder in that (i) Dr. Tingley never discussed those diagnoses, rendering it unclear whether he even considered them, let alone had good reasons for discounting them and, (ii) in any event, the administrative law judge failed to incorporate, in his hypothetical question to the vocational expert present at hearing, Dr. Tingley's modification that the plaintiff could handle simple and semi-complex work if he had "a facilitative supervisor." Statement of Errors at 8.

2. The administrative law judge improperly discounted the Butler and Maierhofer findings of a cognitive disorder when he (i) wrongly stated that Dr. Butler's diagnosis was primarily based on a self-report and not objective testing, despite Dr. Butler's notation of observable attention and concentration difficulties and memory retrieval problems, and

(ii) exceeded the bounds of his competence as a layperson by suggesting that a valid cognitive disorder diagnosis must be based on IQ testing and/or a finding of borderline intellectual functioning. *See id*. at 9-10.[4]

The administrative law judge did not err in relying on the Tingley opinion. Dr. Tingley was asked an open-ended question as to whether there were any appropriately diagnosed mental impairments of record. *See* Record at 631. He implicitly rejected those that he did not list. *See id*.[5] It is clear from his later testimony that he expressly considered the Maierhofer and Butler reports and disagreed with Dr. Butler's assessment of the extent of the plaintiff's cognitive difficulties. *See id*. at 634-36. This was so, he explained, because (i) Dr. Butler had relied both on the plaintiff's self-report and on her observation of him during a period of time when he was receiving no mental health treatment (counseling or medication) and his physical health problems (including recent painful abdominal surgeries) were impacting his mental health, and

---

[4] At oral argument, the plaintiff's counsel further contended that the administrative law judge wrongly rejected the mental RFC opinion of treating counselor Joan Duplessis, LCPC, who found, *inter alia*, that, as a result of short-term memory loss, the plaintiff could understand but not remember even very short and simple instructions. *See* Record at 1218-19. This argument was not made in the statement of errors, *see* Statement of Errors at 4-10, and is therefore waived, *see, e.g., Farrin v. Barnhart,* No. 05–144–P–H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

[5] The open-ended nature of the administrative law judge's question is understandable in view of the variety of mental health diagnoses made by treating sources, examining consultants, and nonexamining consultants. These include diagnoses of (i) substance-induced mood disorder, alcohol dependence, nicotine dependence, and marijuana dependence in complete remission, diagnosed by clinicians at the Acadia Hospital when the plaintiff received treatment for alcohol dependence at that facility in April 2006, *see* Record at 327-30, (ii) depression, diagnosed by Steven W. Youngs, D.O., and other primary care providers at EMMC Center for Family Medicine in 2006-07, *see id*. at 445-46, 472-74, 479-82, 492-93, 501-04, (iii) mood disorder NOS and substance addiction disorder, diagnosed by DDS nonexamining consultants Thomas Knox, Ph.D., and Scott W. Hoch, Ph.D., in 2006, *see id*. at 349, 354, 358, 411, 420, 429, (iv) antisocial personality features and avoidant personality features, diagnosed by DDS examining consultant Donna M. Gates, Ph.D., in February 2009, *see id*. at 559, (v) anxiety/panic disorder – R/O [rule out], depression – R/O, bipolar disorder – R/O, alcohol dependence – R/O, diagnosed by DDS examining consultant Hogan in November 2009, *see id*. at 1009, (vi) depression NOS and substance addiction disorder, diagnosed by DDS nonexamining consultant Brenda Sawyer, Ph.D., in November 2009, *see id*. at 1014, 1019, and (vii) severe depression, generalized anxiety, and an avoidant personality disorder, diagnosed in April 2011 by Duplessis, with a countersignature by Alston Oliver, Ph.D., *see id*. at 1219.

(ii) there was evidence throughout the plaintiff's life that he had sufficient cognitive ability to handle semi-complex work, at least in situations in which he was not overly stressed by exposure to the public or too many coworkers and had a facilitative supervisor. *See id*. at 635-36.[6]

Although the administrative law judge did not ultimately adopt Dr. Tingley's "facilitative supervisor" qualification, *see* Finding 5, *id*. at 582, or convey it to the vocational expert at hearing in questioning whether the limitations at issue would significantly erode the full base of unskilled or semiskilled light or sedentary work, *see id*. at 636-37, the plaintiff falls short of demonstrating that the omission could have been outcome-determinative. He alludes to the vocational expert's testimony, on cross-examination by his counsel, that a need for additional supervision for up to a third of the day would significantly erode the unskilled and semiskilled sedentary and light work base. *See* Statement of Errors at 13; Record at 638. However, Dr. Tingley did not indicate that this was what he meant by a "facilitative supervisor." Instead, he testified that the plaintiff would need careful instruction if directed to make changes and an opportunity to repeat the instruction or implement the changes under some guidance so that it was clear that he understood and carried them out properly. *See id*. at 633. He did not state that the plaintiff would require ongoing supervision at that point, let alone for a third of every day. *See id*.

---

[6] At oral argument, the plaintiff's counsel added that the administrative law judge's reliance on Dr. Tingley's testimony was misplaced in that Dr. Tingley (i) derived his mental RFC opinion from the findings of Dr. Gates, who had made no mental health diagnoses whatsoever, and (ii) wrongly criticized Dr. Butler for relying on the plaintiff's self-reports when doing so is an acceptable clinical interview practice. Dr. Gates cannot fairly be described as having made no diagnoses. As the plaintiff acknowledged in her statement of errors, Dr. Gates diagnosed her with antisocial and avoidant personality features. *See* Statement of Errors at 7; Record at 559. In any event, Dr. Tingley did not rely solely on the Gates report in assessing the plaintiff's mental RFC: he reviewed the record as a whole and testified that he specifically considered the reports of Hogan and Drs. Knox, Sawyer, and Maierhofer. *See id*. at 633-35. As counsel for the commissioner noted at oral argument, the plaintiff's counsel's assertion that Dr. Tingley was "incorrect" in discounting the Butler opinion on the basis of Dr. Butler's reliance on the plaintiff's self-reports is not well-taken. Dr. Tingley is an expert in psychology; the plaintiff's counsel is not. Beyond this, as discussed above, Dr. Tingley's discussion of the Butler report is more nuanced than the plaintiff's counsel acknowledges.

In any event, in assessing the plaintiff's mental RFC, the administrative law judge relied not only on Dr. Tingley's testimony but also on the Maierhofer mental RFC opinion and the February 6, 2009, report and mental RFC by Dr. Gates. *See id*. at 586. Dr. Maierhofer deemed the plaintiff capable, *inter alia*, of recalling and understanding simple tasks and procedures, focusing and concentrating on simple work, and adapting to routine changes, *see id*. at 1181, and Dr. Gates found no restriction in his ability to understand, remember, and carry out either simple or detailed job instructions, *see id*. at 554. Both Dr. Maierhofer's and Dr. Gates' findings are consistent with an ability to meet "[t]he basic mental demands of competitive, remunerative, unskilled work[,]" which include "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling 85-15 ("SSR 85-15"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (1992), at 347. Thus, at the least, the administrative law judge properly relied on the vocational expert's testimony that the restrictions at issue would not significantly erode the base of *unskilled* sedentary and light work. This was enough to carry the commissioner's Step 5 burden. *See* Rules 201.27, 202.20 of Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid").

The administrative law judge's reliance on Dr. Tingley's testimony alone was sufficient to reject the diagnoses of personality disorder and cognitive disorder, obviating the need to consider the plaintiff's criticisms of the other reasons given by the administrative law judge for that rejection. In any event, the administrative law judge's conclusion that the diagnosis of a cognitive disorder was not sufficiently supported by the evidence is backstopped by expert testimony – that of Dr. Tingley. As noted above, Dr. Tingley observed that Dr. Butler relied on the plaintiff's self-report and conducted her mental status examination in circumstances that cast

doubt on the validity of her assessment of the extent of the plaintiff's underlying cognitive difficulties.

For all of these reasons, the administrative law judge's conclusion that the plaintiff did not have a medically determinable cognitive disorder or personality disorder is supported by substantial evidence.

### B. Failure To Find a Need for a Sit-Stand Option

The plaintiff next faults the rejection of his need for a sit-stand option, arguing that the administrative law judge (i) failed to explain his conclusory determination that "[t]he objective medical findings reveal no basis for a sit/stand option" and (ii) wrongly relied on a November 18, 2010, RFC opinion of DDS nonexamining consultant J.H. Hall, M.D. *See* Statement of Errors at 10-12 (citation and internal quotation marks omitted). He asserts that:

1. The administrative law judge's sit-stand finding is directly contradicted by the medical record, including (i) radiologic evidence of degenerative bulging discs and annular tears at L4-L5 and L5-S1 and mild degenerative changes of the lumbar spine and (ii) the opinion of a treating physician, Dr. Youngs, that the plaintiff required a sit-stand option. *See id*. at 10.

2. The administrative law judge wrongly relied on the Hall opinion given that Dr. Hall (i) did not assess the plaintiff's condition prior to September 25, 2009, (ii) projected the RFC that he expected the plaintiff would have as of October 2011, 11 months after his then-recent surgery, and (iii) took into account only the plaintiff's diverticulosis and hernia, not his back-related medical diagnoses. *See id*. at 11-12.

The plaintiff argues that, as a result of these asserted flaws, the administrative law judge's determination on the sit-stand issue is both unsupported by substantial evidence and runs afoul of the remand instructions. *See id.* at 12. I find no error.[7]

The administrative law judge adequately considered both the MRI evidence and the Youngs opinion in assessing the severity of the plaintiff's back impairment, which he reasonably deemed nonsevere. He explained that (i) the 2004 MRI study showed no nerve root impingement, *see* Record at 579, 285-86, (ii) in August 2006, a time frame when the plaintiff claimed that his back pain limited his ability to work, he also told Kris S. Sornberger, D.O., that he had been playing guitar and keyboards at a gig in Calais, *see id.* at 579, 457, 460, (iii) Dr. Sornberger noted normal strength and sensation in the plaintiff's extremities and a normal gait, *see id.* at 579, 463, (iv) in December 2006, based on updated imaging studies, Dr. Youngs noted only mild degenerative changes and stated that the plaintiff's pain had improved with physical therapy and treatment, *see id.* at 579, 495, (v) during the same period, Karen Kelly, MSPT, noted improvement with physical therapy as demonstrated by the plaintiff's improvement in ambulating and sitting at his computer, *see id.* at 579, 513-14, and (vi) the plaintiff testified at hearing that he had not treated for his back pain since December 2006, *see id.* at 579, 620-21. He discounted the Youngs physical RFC opinion on the basis of its inconsistency with the objective medical findings, including Dr. Youngs' own treatment notes, *see id.* at 586-87, observing:

---

[7] At oral argument, the plaintiff's counsel further contended that the administrative law judge's physical RFC finding as a whole was unsupported by substantial evidence (i) for the "closed period" from 2006 to 2009 because the administrative law judge relied on no expert RFC opinion for that period and (ii) for the period thereafter because Dr. Hall wrongly rejected a November 2010 opinion of DDS examining consultant John Farquhar, Jr., M.D., that the plaintiff could not then work, *see* Record at 1158, 1189, and the administrative law judge did not correct that error. These arguments were not made in the statement of errors, *see* Statement of Errors at 3-4, 10-12, and are therefore waived, *see, e.g., Farrin*, 2006 WL 549376, at *5.

> [A]s previously discussed, treatment records from Dr. Youngs and other physicians from EMMC Center for Family Medicine[] reveal objective findings consistent with improvement in both [the plaintiff's] chronic pain and depression. These same treatment records are replete with the [plaintiff's] reports of playing in a band, attending AA meetings, and taking college level courses.

*Id*. at 587 (citations omitted). No other medical expert identified a need for a sit-stand option. Tellingly, the plaintiff does not separately challenge either the finding of a nonsevere back impairment or the rejection of the Youngs opinion. *See* Statement of Errors at 10-12. Indeed, both conclusions are supported by substantial evidence.

Nor is the administrative law judge's reliance on the Hall opinion, for purposes of rejecting the need for a sit-stand option, misplaced. While Dr. Hall did not purport to offer an opinion as to the plaintiff's condition for the period prior to September 25, 2009, *see* Record at 1183, the administrative law judge supportably found, for the reasons recited above, that the back condition was nonsevere as of that time.

For the period from September 25, 2009, to October 14, 2010, *see id*., Dr. Hall considered the plaintiff's self-report, including his reported back pain, and available medical records for the period, *see id*. at 1190. To the extent that there are no diagnostic or treatment records during that period bearing on back pain, it is because, as the plaintiff himself testified, he did not treat for his back after December 2006. *See id*. at 620-21.

While Dr. Hall merely made his best guess as to the plaintiff's condition as of October 15, 2011, *see id*. at 1183, 1190 (notation by Dr. Hall that the plaintiff's impairments were "[s]evere now due to most recent surgery" and, therefore, he assessed limitations for the periods prior to, and 12 months after, that surgery) (boldface omitted), subsequent medical evidence indicates that the plaintiff recovered more quickly than Dr. Hall anticipated. Michael R. Starks, M.D., who performed the abdominal surgery that the plaintiff had just undergone as of the time

of the Hall opinion, *see id*. at 1193, stated in a letter dated December 1, 2010, that, while the plaintiff still had some discomfort, he was doing well and "could resume all regular activities without lifting restrictions[,]" although "he should continue to be careful and seek help with very heavy lifting[,]" *id*. at 1195. By letter dated May 4, 2011, Dr. Starks stated that the plaintiff overall was feeling better, although he still had abdominal pain and back pain that was worse with activities. *See id*. at 1259. He observed that the plaintiff as of that time might be "in or near his baseline state of health." *Id*. He noted no particular activity restrictions. *See id*.

For all of these reasons, the administrative law judge's finding that the plaintiff required no sit-stand option was supported by substantial evidence and did not transgress the dictates of either the court's or the Appeals Council's remand orders, neither of which mandated that he find a need for a sit-stand option. *See id*. at 664, 669.

### C. Challenge to Step 5 Finding

The plaintiff finally argues that the administrative law judge's Step 5 finding is unsupported by substantial evidence in that he omitted to transmit to the vocational expert at hearing a hypothetical question accurately reflecting the extent of the plaintiff's mental and physical restrictions. *See* Statement of Errors at 12-13. This point hinges on the success of the plaintiff's first two points, both of which I have recommended that the court reject. Should the court agree, this challenge, too, fails.

### II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for*

*which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of March, 2013.

                                          /s/ John H. Rich III
                                          John H. Rich III
                                          United States Magistrate Judge